IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN NATURAL RESOURCES, LLC | CIVIL ACTION NO. _____ |
| Plaintiff, | *Electronically Filed* |
| vs. | |
| CHIEF EXPLORATION & PRODUCTION, LLC, and CHEVRON NORTH AMERICAN EXPLORATION & PRODUCTION CO. | |
| Defendants. | |
| | Counsel of Record for this Party: |
| | William E. Hager, III, Esquire<br>PA Supreme Ct. ID #40361 |
| | Law Offices of William E. Hager, III, LLC<br>352 Broad Street<br>New Bethlehem PA  16242<br>(814) 275-3551 |
| | **JURY TRIAL DEMANDED** |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN NATURAL RESOURCES, LLC<br><br>Plaintiff,<br><br>vs.<br><br>CHIEF EXPLORATION & PRODUCTION, LLC, and CHEVRON NORTH AMERICAN EXPLORATION & PRODUCTION CO.<br><br>Defendants. | CIVIL ACTION NO. _____<br><br>*Electronically Filed* |

## COMPLAINT

AND NOW, comes the Plaintiff, American Natural Resources, LLC, by and through counsel, William E. Hager, III, Esquire, of the Law Offices of William E. Hager, III, LLC, and represents as follows, which is a concise statement:

### I.  PARTIES

1. Plaintiff, American Natural Resources, LLC, is a Pennsylvania limited liability company (hereinafter "ANR"), with its principal place of business located at 520 West Parkwood Drive, Rural Valley, Pennsylvania, 16249.

2. Defendant, Chevron North America Exploration and Production Company is a Pennsylvania corporation (hereinafter "Chevron"), with a principal place of business

located at Westpointe Corporate Center One, 1550 Coraopolis Heights Road, Moon Township, PA 15108.

3. Defendant, Chief Exploration & Development, LLC, is a Texas limited liability company (hereinafter "Chief") with its principal place of business located at 5956 Sherry Lane, Suite 1500, Dallas, Texas, 75225.

## II. JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy, without interest and costs, is above the jurisdictional limits.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) because American Natural Resources, LLC is a Pennsylvania Limited Liability Corporation with its principal office located in Rural Valley, Pennsylvania. Furthermore, certain of the acts that form the basis of this Complaint occurred in this District.

## III. PLAINTIFF'S FACTUAL ALLEGATIONS

6. Plaintiff incorporates by reference all preceding paragraphs as if they were set forth in full herein.

7. On and prior to May 20, 2008, Plaintiff was the owner of the working interest in, to and under the oil and gas leasehold interest covering certain areas of real property totaling approximately 2,709.8 net leasehold acres, collectively known as the "HBP Leases" ("held by production"), located in the Pennsylvania counties of Armstrong and Cambria.

A legal description of the leasehold property is attached hereto, a part of such oil and gas lease, marked "Exhibit A," and made a part of this complaint.

8. On May 20, 2008, ANR entered into a purchase and sale agreement with Chief, in which the terms and conditions were established for Chief's acquisition of the HBP Leases. A true and correct copy of the Agreement (hereinafter "2008 Purchase Agreement") is attached hereto, made a part hereof, and marked Exhibit "B."

9. By the terms of the Agreement attached as Exhibit "B" at Closing, ANR delivered fully executed Assignments, by county, of the HBP Leases to Chief, delivering a 100% working interest and an 81.25% net revenue interest in each of the HBP Leases limited to the Deep Rights.

10. By the terms of the Agreement attached as Exhibit "B," Section 3.1 provided: "Chief agrees to drill at least one (1) well on the HBP Lands or lands pooled therewith within one (1) year following Closing. Thereafter, Chief must drill at least one (1) well on the HBP Lands or lands pooled therewith in each succeeding twelve (12) month period beginning on the annual anniversary date of Closing, in order to maintain its ownership in the HBP Leases as to the entirety of the HBP Lands."

11. By the terms of the Agreement attached as Exhibit "B," Section 3.2 provided: "In the event Chief fails to drill a well as prescribed in Section 3.1 in any applicable twelve (12) month period, Chief shall reassign by recordable assignment the HBP Leases to ANR; however, Chief shall retain for each of the wells theretofore drilled by Chief hereunder all acreage within three thousand feet (3,000') of the wellbore (whether a vertical or horizontal wellbore). The reassignment from Chief to ANR shall be free and clear of any liens, overriding royalties or encumbrances created by Chief. Upon the earlier to occur of

(a) the delivery of such reassignment of (b) Chief having drilled a sufficient number of wells so as to be entitled to retain all of the HBP Leases as to all of the HBP Lands, this Agreement will be deemed terminated."

12. Following the execution of the Agreement attached hereto as Exhibit "B," Chief undertook operations on the HBP Leases pursuant to an Operating Agreement, which is attached hereto, made a part hereof, and marked Exhibit "C."

13. Thereafter, Chief executed an Assignment and Bill of Sale of the subject leases to Chief Oil & Gas, LLC, Radler 2000 Limited Partnership and Enerplus Resources (USA) Corporation.

14. Subsequent to acquiring the subject leases by Assignment and Bill of Sale, Chief, Radler 2000 Limited Partnership and Enerplus Resources (USA) executed an Assignment and Bill of Sale to Defendant Chevron.

15. Pursuant to Section 3.2 of the 2008 Purchase Agreement, Chief was required to drill an additional well on the HBP lands, but failed to do so between May 20, 2010 and May 20, 2011.

16. Chevron, the assignee of Defendant Chief, also failed to perform under the continuous drilling clause contained in Section 3.2 of the Purchase Agreement, by failing to drill an additional well between May 20, 2010 and May 20, 2011.

17. By the terms of the 2008 Purchase Agreement, the oil and gas rights to the said HBP lands automatically reverted to the Plaintiff.

18. On or about March 1, 2012, ANR executed a letter agreement with Steven M. Phillips, president of NTS Energy, LLC, of Indiana, Pennsylvania, to purchase the leases relative to 1600.2 acres of HBP land, to which ANR anticipated regaining full legal title

following the assignment from Chevron due to their failure to drill an additional well. A true and correct copy of said letter agreement is attached hereto, made a part hereof, and marked Exhibit "D."

19. At that time, NTS Energy was ready, willing and able to purchase the HBP acreage for two thousand dollars ($2,000.00) per acre.

20. Had the assignment of the HBP Leases been timely accomplished by Chevron, ANR would have sold the leases to the 1600.2 HBP acres to NTS Energy at the price of two thousand dollars ($2,000.00) per acre, at which time the Plaintiff would have profited in the amount of three million, two hundred thousand, four hundred dollars ($3,200,400) from the sale.

21. At the time ANR procured a ready, willing and able buyer, the circumstances of the contract changed, and at that time, ANR repeatedly requested that Chevron complete the reassignments.

22. On or about June 12, 2012, Plaintiff's employee, Cindy Geidel, contacted Mark Tate, the Land Team Lead for Chevron, by telephone to notify him that his employer failed to timely drill a well pursuant to the terms of the May 20, 2008 Agreement.

23. On or about June 21, 2012, Geidel spoke with Tate, who advised that his superiors at Chevron required him to obtain "some sort of letter" stating Chief did not meet their drilling obligation and that this agreement was prior to the Chevron acquisition.

24. On June 25, 2012, ANR President Bill Waller sent written correspondence to Mark S. Tate, notifying him that pursuant to the May 20, 2008 agreement, Chevron was responsible for reassigning the HBP leases back to ANR. In boldface type, Waller explicitly stated, "[t]ime is of the essence, as we have additional partners that wish to

6

acquire our acreage position." A true and correct copy of the June 25, 2012 correspondence is attached hereto, made a part hereof and marked Exhibit "E."

25. On August 23, 2012, Waller sent written correspondence via email to Mark S. Tate inquiring as to the status of the reassignments. Waller stated that the matter needed to be "completed ASAP." A true and correct copy of the August 23, 2012 correspondence is attached hereto, made a part hereof and marked Exhibit "F."

26. On September 20, 2012, Waller received an emailed reply from Tate informing him that Chevron was "still working through our process." A true and correct copy of the September 20, 2012 correspondence is attached hereto, made a part hereof and marked Exhibit "G."

27. It was not until October 15, 2012 that Chevron executed the assignments to Plaintiff for the Cambria County HBP Leases and Armstrong County HBP leases, respectively.

28. Prior to October 15, 2012, the date of the execution of the assignments by Chevron to ANR, a change in regulations on the leased land relative to Maximum Allowable Operating Pressure (MAOP) resulted in NTS Energy backing out of the sale.

### IV.   COUNTS

#### COUNT I
#### ANR v. Chief
*Breach of Contract*

28. Plaintiff incorporates by reference all preceding paragraphs as if they were set forth in full herein.

29. Chief failed to perform its obligations under Section 3.1 of the 2008 Purchase Agreement in a timely manner, triggering the assignment provisions of Section 3.2.

30. Chief failed to perform the assignments within a reasonable amount of time pursuant to Section 3.2 of the 2008 Purchase Agreement, following repeated requests by ANR personnel that time was of the essence and that a buyer existed who was waiting to purchase the acreage.

31. As the original assignor of the HBP Lease interests, Chief had a duty to the Plaintiff to ensure that its successors properly carried out the contractual duties owed and flowing from the 2008 Purchase Agreement.

32. The existence of a ready, willing and able purchaser of the acreage position, along with Plaintiff's repeated demands to undertake the reassignments, created a serious change of circumstances affecting the contract.

33. The delay in completing the assignments was in no way attributable to the Plaintiff.

34. As a direct result of Chief's failure to perform within a reasonable amount of time, after urgings by Plaintiff to act, Plaintiff suffered damage including the loss of business opportunity and market advantage, as well as actual loss due to delay of use of sale proceeds, and costs that were incurred incident to the delay.

WHEREFORE, the Plaintiff demands judgment in its favor and against the Defendants.

### COUNT II
### ANR v. Chevron
### *Breach of Contract*

35. Plaintiff incorporates by reference all preceding paragraphs as if they were set forth in full herein.

36. Chevron failed to perform the assignments within a reasonable amount of time pursuant to Section 3.2 of the 2008 Purchase Agreement, following repeated requests by ANR

personnel that time was of the essence and that a buyer existed who was waiting to purchase the acreage.

37. The existence of a ready, willing and able purchaser of the acreage position created a serious change of circumstances affecting the contract, and because ANR seriously urged the performance of the assignment, Chevron is liable for the payment of damages for their delay in Equity. *See, Haverstick v. Erie Gas Co.,* 29 Pa. 254, 256 (1857).

38. The delay in completing the assignments was in no way attributable to the Plaintiff.

39. As a direct result of Chevron's failure to perform within a reasonable amount of time, after urgings by Plaintiff to act, Plaintiff suffered damage including the loss of business opportunity and market advantage, as well as actual loss due to delay of use of sale proceeds, and costs that were incurred incident to the delay.

WHEREFORE, the Plaintiff demands judgment in its favor and against the Defendants.

### COUNT III
### ANR v. Chevron
*Negligent Performance of a Contract*

40. Plaintiff incorporates by reference all preceding paragraphs as if they were set forth in full herein.

41. Chevron had a duty to the Plaintiff pursuant to the 2008 Agreement, to perform the assignments of the HBP leases within a reasonable amount of time following its failure to drill under the continuous drilling clause in Section 3.1.

42. The test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contractual obligation (misfeasance) rather than the mere failure to perform (nonfeasance). *Hirsch v. Mount Carmel Dist. Indus. Fund, Inc.,* 363 Pa. Super. 433, 435, 526 A.2d 422, 423 (1987).

43. Chevron failed to properly perform its contractual obligation to reassign the HBP leases pursuant to Section 3.2 of the 2008 Agreement in the following respects:
    a. In its refusal to cooperate with ANR in its reasonable requests for information and documentation in a timely manner;
    b. In its refusal to complete and furnish documents necessary for the reassignment in a timely manner;
    c. In its failure to respond to correspondence and telephone communications from ANR;
    d. In its failure to exercise good faith in doing everything possible to comply with its obligations under the Agreement;
    e. And in its general failure to deal with matters necessary to close and execute the assignments in a reasonably timely manner following repeated urgings by ANR.
44. The delay in completing the assignments was in no way attributable to the Plaintiff.
45. As a direct result of Chevron's failure to perform within a reasonable amount of time, after urgings by Plaintiff to act, Plaintiff suffered damage including the loss of business opportunity and market advantage, as well as actual loss due to delay of use of sale proceeds, and costs that were incurred incident to the delay.

WHEREFORE, the Plaintiff demands judgment in its favor and against the Defendants.

### COUNT V
### ANR v. Chevron
### *Quantum Meruit*

46. Plaintiff incorporates by reference all preceding paragraphs as if they were set forth in full herein.

47. ANR was a third party beneficiary to the assignment contract between Chief and Chevron.

48. Defendant Chevron derived management fees and other benefits and were otherwise unjustly enriched from transactions connected with the rights to the HBP lease interest to the detriment of Plaintiff.

49. Defendant's enrichment is directly and causally related to the detriment of Plaintiff.

50. The benefit was accepted by Defendant under such circumstances that it would be inequitable for it to be retained without payment. As alleged above, Defendant, inter alia, breached their duties to Plaintiff and breached contracts with Plaintiff, and therefore Defendant is not justified to retain the benefits conferred on it.

51. As a result of all of the Defendants' conduct, Plaintiff suffered damages in an amount previously stated.

WHEREFORE, the Plaintiff demands judgment in its favor and against the Defendants.

## V.   PRAYERS FOR RELIEF

WHEREFORE, ANR demands and prays that judgment be entered in its favor against Defendants, as follows:

1. Judgment against Defendants for three million, two hundred thousand, four hundred dollars ($3,200,400) as the proceeds of Plaintiff's interest, plus the proceeds realized from such interest to the date of adjudication of this cause according to proof, with interest on such amount awarded as allowed by law from the date of judgment until paid;

2. Delay of sale damages;

3. Damages for lost opportunity costs;

4. Prejudgment interest and post-judgment interest, according to law

5. Costs of suit; and

6. Such other and further relief as this Court deems just and proper.

## VI.   JURY DEMAND

Plaintiff demands a trial by jury with respect to all issues so triable.

Respectfully submitted,

/s/ William E. Hager, III
WILLIAM E. HAGER, III
Counsel for Plaintiff
Law Offices of William E. Hager, III, LLC
352 Broad Street
New Bethlehem, PA 16242
(814) 275-3551
Fax (814) 275-1141
hagerlaw@windstream.net
Pa. Supreme Court ID: 40361